UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
LESLIE LISNITZER, individually and on
behalf of all others similarly situated,

                          Plaintiff,                 FINDINGS OF FACT
                                               AND CONCLUSIONS OF LAW

        -against-                       CV 11-4641 (LDW) (ARL)

HOWARD ZUCKER, M.D., as
Commissioner of the New York State
Department of Health, and
SAMUEL D. ROBERTS, as Deputy
Commissioner of the Office of Temporary
and Disability Assistance of the New York
State Department of Family Assistance,

                               Defendants.
--------------------------------------------------X

WEXLER, District Judge

       Plaintiff Leslie Lisnitzer ("Lisnitzer") brings this putative class action for

declaratory and injunctive relief against officials of the New York State Department of

Health ("DOH") and New York State Office of Temporary and Disability Assistance

("OTDA"), challenging the legality of an alleged statewide policy and practice in New

York under which the state terminates fair hearing appeals of local agency decisions

denying Medicaid benefits by reversing and remanding those matters back to local

agencies rather than determining eligibility for Medicaid benefits by a definitive and final

fair hearing decision within the required time limit.  Having concluded a bench trial, the

Court makes the following findings of fact and conclusions of law.

<u>BACKGROUND AND FINDINGS OF FACT</u>

A.  <u>Medicaid Program and Fair Hearing Process in New York</u>

1.  Medicaid is a cooperative federal-state program designed to assist needy individuals and families "whose income and resources are insufficient to meet the costs of necessary medical services."  *See* 42 U.S.C. § 1396-1.

2.  States participating in the Medicaid program must comply with the requirements imposed by Title XIX of the Social Security Act ("Medicaid Act), *see* 42 U.S.C. § 1396 *et seq.*, and the regulations promulgated by the Secretary of the United States Department of Health and Human Services ("HHS"), *see* 42 C.F.R. pts. 430-456.

3.  HHS disseminates a "State Medicaid Manual" to participating states providing guidance for implementing the Medicaid Act and regulations (the "Manual").  *See* Joint Pre-Trial Order ("JPTO") Exh. 6.

4.  To qualify for federal funding, participating states must submit a "Medicaid State Plan" ("MSP") to HHS's Center for Medicare and Medicaid Services for approval. *See* 42 U.S.C. §§ 1396-1, 1396a(b), 1396b; 42 C.F.R. pt. 430.

5.  A participating state can either administer the Medicaid program itself or supervise its administration through local political subdivisions in the state.  *See* 42 U.S.C. § 1396a(a)(5).

6.  New York State administers the Medicaid program through local social services districts ("local agency"), namely the City of New York and the other 57 counties in the state.  *See* N.Y. Soc. Serv. Law §§ 56, 61, 65, 365[1](a).

7.  If a participating state decides to supervise the administration of the Medicaid program through political subdivisions, it must designate a single state agency with the authority to ensure local conformity with state rules, regulations, and policies.  *See* 42 U.S.C. § 1396a(a)(1), (5); 42 C.F.R. § 431.10.

8.  Under its MSP, New York designates its DOH as the single state agency charged with administering the Medicaid program in New York.  *See* State Plan Under Title XIX of the Social Security Act, Medical Assistance Program ("New York Medicaid State Plan"), JPTO Exh. 1.

9.  DOH is authorized to establish Medicaid eligibility standards, promulgate applicable regulations, maintain a system of administrative fair hearings, and make final administrative determinations and issue final decisions on such matters.  *See id.*; N.Y. Soc. Serv. Law §§ 363-a, 364[2].

10.  A Medicaid applicant whose claim is denied by a local agency is entitled to an opportunity for "a fair hearing before the State agency."  42 U.S.C. § 1396a(a)(3).

11.  DOH has established a fair hearing system, to provide "an opportunity for a fair hearing . . . to any individual whose claim for medical assistance . . . is denied or is not acted upon with reasonable promptness."  *Id.*; *see* N.Y. Soc. Serv. Law § 22.

12.  Under its MSP, New York designates the OTDA to conduct Medicaid fair hearings and make findings and recommendations to DOH, as DOH remains "responsible for making final administrative determinations and issuing final decisions," N.Y. Soc. Serv. Law § 364(2)(h), and for ensuring the fair hearing system's compliance with federal law and regulations, *see* 42 C.F.R. § 431.205.  *Shakhnes v. Berlin*, 689 F.3d 244, 248 (2d Cir. 2012); *see* JPTO Exh. 1.

13.  The Office of Administrative Hearings ("OAH"), a division within OTDA, is responsible for providing administrative hearings and issuing fair hearing decisions upon review of local agency decisions.  *See* http://otda.ny.gov/hearings.

14.  When a local agency denies an individual's Medicaid application, it must issue a written notice informing the individual of the reasons for the adverse action and the right to request a fair hearing to contest the decision.  *See* 42 C.F.R. §§ 431.206(b), 431.210(b); 18 N.Y.C.R.R. §§ 358-2.2(a)(1), 358-3.3(a); JPTO Exh. 49.

15.  When an aggrieved claimant–an appellant–requests a fair hearing to contest the denial of Medicaid benefits, DOH must take prompt, definitive and final administrative action and issue final decisions on such matters ordinarily within 90 days of the fair hearing request.  *See* 42 C.F.R. § 431.244(f)(1); 18 N.Y.C.R.R. § 358-6.4(a); *see also Shakhnes*, 689 F.3d at 254 ("The District Court correctly held that 42 U.S.C. § 1396a(a)(3)–as construed by the regulation–creates a right . . . to receive a fair hearing and a fair hearing decision '[o]rdinarily, within 90 days' of a fair hearing request.").

16.  As provided in § 2902.10 of the Manual:  "The requirement for prompt, definitive, and final administrative action means that all requests for a hearing are to receive prompt attention and will be carried through all steps necessary to completion." *See* JPTO Exh. 6.

17.  If a Medicaid appellant requests an adjournment, the 90-day limit for DOH to take prompt, definitive and final administrative action is extended by the number of days until the hearing is reconvened.  *See* 42 C.F.R. § 431.244(f)(4)(i)(A); 18 N.Y.C.R.R. § 358-5.3(d).

18.  At a fair hearing to review the denial of Medicaid benefits, the appellant has the burden of establishing that the adverse action was not correct.  *See* 18 N.Y.C.R.R. § 358-5.9(a)(1); JPTO Exh. 4.

19.  At a fair hearing, the OTDA hearing officer is charged to develop a complete fair hearing record, review and evaluate evidence, make findings of fact and conclusions of law, prepare an official report containing the substance of what transpired at the hearing and render a recommended decision to the DOH Commissioner or the DOH Commissioner's designee.  *See* 18 N.Y.C.R.R. § 358-5.6(a), (b).

20.  In developing a complete fair hearing record, a hearing officer is empowered to, *inter alia*, administer oaths, elicit testimony, require document production, issue subpoenas, direct the attendance of witnesses, and adjourn the hearing.  *See* 18 N.Y.C.R.R. §§ 358-5.3, 358-5.6(b).

21.  At a fair hearing, the OTDA hearing officer's review is limited to the reasons stated in the local agency notice, not whether the appellant is eligible for the Medicaid benefit at issue.  *See* Trial Transcript ("Tr.") 72-73, 76-77.

22.  When DOH issues a fair hearing decision to a Medicaid appellant, it is accompanied by a "Summary of Enclosed Fair Hearing Decision" form which lists the following six possible fair hearing outcomes: "Reverse," "Remand," "Agency Agreement," "Correct When Made," "Affirm" and "Other."  *See* JPTO Exh. 13.

23.  A fair hearing decision which reverses the local agency's reason for the contested action and remands the matter back to the local agency does not determine the appellant's eligibility for the contested Medicaid benefit.  Tr. 60-61.

24.  If a fair hearing decision reverses the denial of Medicaid benefits and remands the matter to the local agency for further consideration, DOH prohibits the local agency from denying the application upon the reason set forth in the local agency's denial that was reversed.  *See* JPTO Exh. 4.

25.  When a fair hearing decision reverses the denial of Medicaid benefits and remands the matter to the local agency for further consideration, DOH requires the local agency to continue to process the application if one or more eligibility factors need to be considered and issue a new decision as soon as possible, while preserving the applicant's original application date. *See id.*

26. Upon remand, DOH and OTDA do not monitor the outcome of the Medicaid adverse action which was sent back to the local agency unless the appellant complains about the local agency's non-compliance with the hearing decision. *See* Deposition of Nigel A. Marks, at 79 line 24-80 line 7, JPTO Exh. 3; Deposition of James Ryan III, at 91 line 4-92 line 3, JPTO Exh. 2; Tr. 84.

27. If a fair hearing decision remands the contested Medicaid issue back to the local agency, the hearing officer who presided at that fair hearing is finished with that administrative appeal and it is removed from that hearing officer's calendar. Tr. 56, 61.

28. If a fair hearing decision reverses the reason for the local agency's action and remands the matter back to the local agency, the hearing officer who presided at the hearing is not informed about the local agency's further action upon remand. *See* Tr. 65.

29. DOH considers a fair hearing decision which reverses the local agency's reason for the contested action and remands the matter back to the local agency under any of the remand codes to be final administrative action which terminates the Medicaid appeal. *See* Tr. 73, 80.

30. A fair hearing decision which remands the contested Medicaid issue back to the local agency is considered by OAH to satisfy the 90-day deadline by which to take definitive and final administrative action. Tr. 60.

31.  If on remand the local agency's next determination adheres to its denial on the same issue, the Medicaid applicant must request a new fair hearing to contest the subsequent denial.  *See* Tr. 73, 79-80.

32.  If on remand another fair hearing is requested to contest the subsequent denial by the local agency, the hearing officer who presided at the previous fair hearing is not assigned to hear the subsequent fair hearing.  Tr. 61, 65.

B.  Lisnitzer's Medicaid Application and Fair Hearing

1.  On March 29, 2011, Lisnitzer, by attorney John Castellano, Esq. ("Castellano") of the Mercy Advocacy Program, applied to the Suffolk County Department of Social Services ("County Agency") for Medicaid coverage to pay the $96.50 monthly cost of his Medicare Part B premium.  *See* Decision After Fair Hearing, dated September 6, 2011 ("September 6, 2011 FHD"), JPTO Exh. 14.

2.  Although Lisnitzer's monthly income exceeded the customary limit to qualify for Medicaid, Lisnitzer requested that the County Agency approve Medicaid payment of his monthly Medicare Part B premium pursuant to a state policy directive, contained in Attachment II of Administrative Directive 87 ADM-40, designed to maximize Medicare coverage for high users of medical services.  *See id.*; JPTO Exh. 31.

3.  By notice dated April 27, 2011, the County Agency denied Lisnitzer's application without considering 87 ADM-40.  *See* JPTO Exh. 14.

4.  On June 10, 2011, Lisnitzer requested a fair hearing from OAH to contest the adverse action.  *See id.*

5.  The fair hearing began on August 4, 2011 before an Administrative Law Judge ("ALJ").  Tr. 19.

6.  At the hearing, Lisnitzer argued that the County Agency should have found him eligible for payment of his monthly Medicare Part B premium by applying 87 ADM-40, and he requested the ALJ to direct the County Agency to pay his Medicare Part B premium, not to remand to the County Agency for further review.  *See* JPTO Exh. 14, at 8.

7.  During the hearing, with Lisnitzer's consent, the ALJ granted the County Agency an adjournment to review Lisnitzer's eligibility for Medicaid payment of his Medicare Part B premium, particularly to determine whether the County Agency considered 87 ADM 40 in making the eligibility determination.  Transcript of Hearing, Aug. 4, 2011, Defendants' Trial Exh. A, No. 001438-001476, at 29-30, 34, 38.

8.  On August 17, 2011, the fair hearing continued, with the County Agency arguing that 87 ADM-40 did not apply and with Lisnitzer arguing that it did apply.  *See* Transcript of Hearing, Aug. 17, 2011, Defendants' Trial Exh. A, No. 001477-001493.

9.  In an "Official Report of Fair Hearing," dated August 17, 2011, the ALJ (1) observed that Lisnitzer is "requesting a determination of cost effectiveness" regarding his "Medicare Part B Premium"; (2) acknowledged that the local agency "failed to make

the determination"; and (3) recommended a "[r]emand to [the County] Agency to do so and issue a notice accordingly." JPTO Exh. 15.

10. By the September 6, 2011 FHD, the DOH, by the Commissioner's designee, "reversed" the County Agency's denial of benefits and "remanded" the matter to the County Agency, directing the agency "to make the [eligibility] determination . . . following the directives set forth in 87 ADM-40" and "to comply immediately with the directives," as required by 18 N.Y.C.R.R. 358-6.4. JPTO Exh. 14, at 8.

11. The "Transmittal of Fair Hearing Decision to Appellant" provided:

> If the decision shows that you won your hearing and your local social services Agency is directed to take certain action, the Agency should do this forthwith (as quickly as possible). If you do not feel that the Agency has taken the action which the decision tells it to take within 10 days after you receive this decision, you may fill out the attached form [to submit a complaint to the Compliance Unit].

Defendants' Trial Exh. A, at 001311.

12. On September 23, 2011, Lisnitzer filed this federal action. *See* ECF Docket Entry ("DE") 1.

13. After the County Agency adhered to its prior denial of Medicaid payment for Lisnitzer's Medicare Part B premium, Lisnitzer notified the Compliance Unit on May 14, 2012 that the County Agency had not determined cost-effectiveness as required by the September 6, 2011 FHD. *See* JPTO Exhs. 18.

14. On May 17, 2012, three days after Lisnitzer contacted the Compliance Unit, the County Agency determined that Lisnitzer was eligible for payment of his Medicare Part B premium. *See* JPTO Exhs. 18, 19.

15. By "Notice of Intent to Discontinue/Change Medical Assistance," dated May 18, 2012, the County Agency informed Lisnitzer that Medicaid would pay his monthly Medicare Part B premium commencing on July 1, 2012 and would reimburse him $1,476.00 for the cost of those premiums retroactively to April 1, 2011. *See* JPTO Exh. 20.

## DISCUSSION AND CONCLUSIONS OF LAW

A. Mootness Defense and Renewed Class Certification Motion

When Lisnitzer commenced this action on September 23, 2011, he immediately moved for class certification. *See* DE 3. The motion was denied on November 10, 2011 without prejudice, subject to renewal under a court-approved briefing schedule. After the motion was renewed and fully briefed, the Court denied the motion on July 31, 2012 without prejudice to renewal based on the parties' attempts to settle the action. *See* DE 6; Order entered July 31, 2012. On January 14, 2013, the Court administratively closed the action, and on April 2, 2015, when efforts to reach a settlement failed, the action was reopened. *See* DE 28; Order entered April 2, 2015. After the action was reopened, the parties continued efforts to settle, but again were unsuccessful. On February 26, 2016,

Lisnitzer renewed his motion for class certification. *See* DE 38; Order entered February 26, 2016. The Court again denied the motion for class certification without prejudice, advising the parties that the issue could best be determined at the bench trial. *See* Order entered October 6, 2016. After trial, Lisnitzer again renewed his motion for class certification.

Defendants contend that this action became moot when the County Agency determined on May 17, 2012 that Medicaid would pay Lisnitzer's monthly Medicare Part B premium, *see* JPTO Exhs. 18, 19. Moreover, defendants oppose the renewed motion for class certification, mainly on the grounds that Lisnitzer failed to renew the motion during the trial and that Lisnitzer is not an adequate class representative. In response, Lisnitzer argues that he properly renewed his motion for class certification and that (1) his claims are not moot because they are "capable of repetition yet evading review," *see Murphy v. Hunt*, 455 U.S. 478, 482 (1982); and (2) that his claim for purposes of a class action is preserved by the "relation-back doctrine," under which the granting of class certification relates back to the filing of the complaint, *see Amador v. Andrews*, 655 F.3d 89, 100 (2d Cir. 2011).

As a preliminary matter, the Court agrees with Lisnitzer that he properly renewed his motion for class certification. The motion had been fully briefed since before the case was administratively closed in January 2013, and it should have been no surprise to defendants that the motion would be renewed during or at the conclusion of the trial.

A class action cannot be maintained "without a named plaintiff who has standing." *Id.* at 99. But "once standing is established for a named plaintiff, standing is established for the entire class." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009). Constitutional standing requires a plaintiff to demonstrate that he has personally suffered: (1) an injury-in-fact; (2) that is fairly traceable to defendants' alleged misconduct; and (3) is likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The related mootness doctrine "ensures that the occasion for judicial resolution established by standing persists throughout the life of a lawsuit." *Amador*, 655 F.3d at 99.

The Court agrees with Lisnitzer that his individual claim did not become moot after he filed the complaint, and that, in any event, class certification would relate back to the filing of the complaint, thereby preserving Lisnitzer's claim for class certification purposes. Even though Lisnitzer has not had a fair hearing since 2011, he offered evidence at trial concerning additional proceedings in 2012 and 2016 concerning his periodic recertification and continued eligibility for payment of his Medicare Part B premium. *See* N.Y. Soc. Serv. Law § 366-a(5) (requiring reconsideration of benefits "from time to time, or as frequently as may be required by the regulations of the [DOH]"). Such proceedings are relevant to the extent that they demonstrate that Lisnitzer could suffer repeated deprivations under the challenged policy and practice, with such deprivations evading timely review. Such proceedings are also relevant in that they

demonstrate that similarly situated individuals could suffer repeated deprivations under

the challenged policy and practice, with such deprivations evading timely review.

Regarding class certification and the relation-back doctrine, the Second Circuit has

explained that "the relation-back doctrine . . . has unique application in the class action

context, preserving the claims of some named plaintiffs for class certification purposes

that might well be moot if asserted only as individual claims." *Amador*, 655 F.3d at 100.

For instance, the Second Circuit observed in *Amador*:

> We have applied the relation-back theory to recipients
> of public assistance alleging that action for public assistance
> was unlawfully delayed by the state. *See Robidoux v. Celani*,
> 987 F.2d 931 (2d Cir. 1993). In that decision, we concluded
> that because the state would almost always process a delayed
> application before relief could be obtained through litigation
> and some of the appellants alleged that they expected to need
> public assistance in the future, the claims were not mooted by
> their receipt of benefits after the filing of the complaint. *Id.* at
> 938-39.

*Amador*, 655 F.3d at 100. In the present case, the claims of unnamed members of the

class are not moot, as a continuing class of similarly situated persons would suffer the

claimed harm. *See Amador*, 655 F.3d at 100. Accordingly, the Court rejects defendants'

mootness defense.

Subject to further proceedings, the Court finds that Lisnitzer sufficiently

demonstrates (1) that the prerequisites for a class action are met, namely, numerosity,

typicality, commonality, and adequacy of representation, *see* FRCP 23(a); and (2) that

defendants, have acted on grounds that apply generally to the class as defined by

Lisnitzer, *see* Plaintiff's Reply Mem. of Law in Further Support of Motion for Class

Cert., at 2 (DE 13), so that final injunctive or corresponding declaratory relief is

appropriate respecting the class as a whole, *see* FRCP 23(b)(2).  Individualized issues

among Lisnitzer and class members seem unlikely to impair the Court's ability to issue

effective and appropriate injunctive and declaratory relief.

B.  Legality of Defendants' Alleged Policy and Practice

Lisnitzer challenges the legality of an alleged statewide policy and practice of

defendants to "terminate . . . administrative appeals by remanding the matter back to [the

local agency] for further review rather than ruling on the correctness of the challenged

action."  Plaintiff's Reply Mem. for Class Cert. at 3; Plaintiff's Post-Trial Brief at 1

(challenging an alleged policy and practice by which defendants "terminate fair hearings

pertaining to the denial or adequacy of Medicaid benefits by remanding the contested

action back to [the local agency] . . . whose adverse determination triggered the fair

hearing request.").  Lisnitzer contends that defendants "remand" matters "[r]ather than

develop[] an administrative record to support a substantive ruling on the merits."

Plaintiff's Reply Mem. for Class Cert. at 3.  According to Lisnitzer, "[b]ereft of

supervision from State Defendants, [the local agency is] then free to issue a post-remand

determination matching the one that spawned the initial fair hearing request."  *Id.*  As a

result, Medicaid applicants are left "to exhaust an administrative remedy that potentially

has no end."  Plaintiff's Post-Trial Brief at 5.  Lisnitzer claims a "federal constitutional

and statutory right to a definitive and final fair hearing decision which determines [an applicant's] eligibility for the contested Medicaid benefit and that defendants' 'reverse and remand' policy violates that federal right." *Id.* at 1. Lisnitzer primarily rests his argument on the following comment in § 2903.2 of the Manual: "Remanding the case to the local unit for further consideration is not a *substitute* for definitive and final administrative action." JPTO Exh. 6 (emphasis added). According to Lisnitzer, the regulatory background demonstrates "that the federal agency charged to implement 42 U.S.C. § 1396a(a)(3) expected participating States to render a 'definitive and final' fair hearing decision and expressly prohibited a decision which simply remanded the contested action back to the local agency for further review." Plaintiff's Post-Trial Brief at 12-13.

Defendants deny that any such policy and practice exists or that Lisnitzer was denied any federal right. Defendants point out that Lisnitzer's fair-hearing request raised the question of "whether the local agency was wrong in not considering 87 ADM-40 in deciding whether Mr. Lisnitzer was entitled to payment of his Medicare Part B premiums?" State Defendants' Post-Trial Mem. of Law at 17. According to defendants, the fair hearing decision answered that question:

> The Agency's failure to make a determination as to whether it was cost effective to pay for [Lisnitzer's] Medicare Part B Premium notwithstanding the fact that his income is in excess of the standard, on the grounds that [Lisnitzer] fit into the criterion of "high user of medical services", including persons over 65, for whom it is usually cost effective for a

> local district to pay premiums for Medicare Part B if the
> applicant/recipient is not already enrolled is not correct and is
> reversed.

JPTO Exh. 14, at 8. The decision then specifically directs the local agency "to make the

determination of cost effectiveness in this case following the directives set forth in 87

ADM-40 Attachment II and notify [Lisnitzer] accordingly." *Id.* Defendants further note

that, upon remand, Lisnitzer was advised of his right to complain to the Compliance Unit

if he did not receive a decision within 10 days. Rather than complain upon the expiration

of 10 days, he filed this action, and then he waited almost eight months before notifying

the Compliance Unit. Once he notified the Compliance Unit, he received a decision

within three days determining that he was eligible for payment of his Medicare Part B

premium. JPTO Exh. 18, 19.

Neither the Medicaid Act nor governing regulations define the phrase "final

administrative action." Nor do they prohibit a hearing officer from remanding a matter.

Indeed, the ALJ did not simply remand Lisnitzer's matter to the local agency "for further

review," as Lisnitzer suggests, *see* Plaintiff's Post-Trial Brief at 13. Rather, as noted, the

ALJ gave specific direction to the local agency to determine cost effectiveness following

the directives set forth in 87 ADM-40. Nevertheless, Lisnitzer was entitled to "final

administrative action" on his claim within 90 days after the fair hearing request,

notwithstanding the remand. *See Konstantinov v. Daines*, 101 A.D.3d 520, 520-22, 956

N.Y.S.2d 38, 39-40 (1st Dept. 2012); *see also Shakhnes*, 689 F.3d at 254-55 ("The District

Court correctly held that 42 U.S.C. § 1396a(a)(3)—as construed by the regulation–creates a right . . . to receive a fair hearing and a fair hearing decision '[o]rdinarily, within 90 days' of a fair hearing request."). The Court agrees with Lisnitzer that the 90-day requirement for "final administrative action," a permissible construction of 42 U.S.C. § 1396a(a)(3), means that the state was required to provide a final determination of his eligibility for benefits within that time period, not simply any disposition, including a "remand," of the appeal. As the First Department observed in *Konstantinov*, "any remand should specify the time in which the agency must act and report back so that the ALJ can render a final determination within that 90-day period." *Konstantinov*, 101 A.D.3d at 520-22, 956 N.Y.S.2d at 39-40. The open-ended remand of Lisnitzer's appeal, allowed under defendants' policies and practices, led to a violation of Lisnitzer's right to a final determination of his eligibility for benefits, *i.e.*, "final administrative action," within 90 days of his fair hearing request.[1]

## C. Renewed Motions to Intervene

In December 2016, Lisnitzer filed two motions to intervene, seeking the intervention of several Medicaid appellants also represented by Lisnitzer's counsel. *See* DE 48, 51. The Court denied the motions, as stated at a conference on January 23, 2017, particularly given the prejudice to defendants of allowing intervention more than five years after this action was commenced and only shortly before the trial, which was then

---

[1]Given this determination, the Court need not reach Lisnitzer's claim that defendants also violated his constitutional rights.

scheduled to begin on March 6, 2017.  *See* DE 43, 63.  After trial, Lisnitzer renewed the motions to intervene.  Defendants oppose renewal of the motions.

Upon consideration, the Court adheres to its prior determination and denies the renewed motions to intervene.


## CONCLUSION

For the above reasons, the Court (1) finds that the action is not moot and that defendants' policy and practice violated plaintiff Lisnitzer's right to a timely fair hearing decision; (2) grants Lisnitzer's motion for class certification; and (3) denies Lisnitzer's renewed motions to intervene.  The parties are directed to contact chambers for further proceedings.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated:  Central Islip, New York
          January 26, 2018